IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

PENNY L. GILLSON,

        Plaintiff,

        v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

        Defendant.

3:10-cv-6294-ST

FINDINGS AND RECOMMENDATION

STEWART, Magistrate Judge:

## INTRODUCTION

Plaintiff, Penny Gillson ("Gillson"), appeals the Commissioner's decision denying her applications for disability insurance benefits and supplemental security income payments under Titles II and XVI of the Social Security Act. The court has jurisdiction under 42 USC § 405(g). The Commissioner's decision should be affirmed.

1 - FINDINGS AND RECOMMENDATION

**ALJ'S FINDINGS**

Gillson alleged disability beginning October 31, 2006, due to arthritis, osteoporosis, blood pressure, and pain in the hip, lower back, upper back, neck, knees and right leg. Admin. R. 33, 135. The administrative law judge ("ALJ") applied the five-step sequential disability determination process set forth in 20 CFR §§ 404.1520 and 416.920. *See Bowen v. Yuckert*, 482 US 137, 140 (1987) (describing the decision-making process in detail). As pertinent to this appeal, the ALJ made the following findings.

The ALJ found Gillson's ability to perform basic work activities limited by the combined effects of degenerative joint disease, osteoporosis, rheumatoid arthritis, and hypertension. Admin. R. 13. The ALJ found that, despite her impairments, Gillson retained the residual functional capacity ("RFC") to perform light work, except that she is limited to no more than frequent balancing, no more than occasional stooping, kneeling, crouching, crawling, and walking up or down ramps or stairs, and cannot climb ladders, ropes or scaffolds. *Id.* at 15. The ALJ elicited testimony from a vocational expert ("VE") who said that a person of Gillson's age, education, work experience, and RFC could perform the activities required in the work she had done in the past. *Id.* at 20, 54-55. The ALJ concluded that Gillson had failed to prove she was disabled within the meaning of the Social Security Act. *Id.* at 20.

**STANDARD OF REVIEW**

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings of fact are supported by substantial evidence in the record as a whole. 42 USC § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F3d 1190, 1193 (9th Cir 2004). Under this standard, the Commissioner's factual findings must be upheld if supported by

inferences reasonably drawn from the record and if evidence exists to support another rational interpretation, the court must defer to the factual findings in the Commissioner's decision. *Batson*, 359 F3d at 1193; *Andrews v. Shalala*, 53 F3d 1035, 1039-40 (9th Cir 1995).

## FINDINGS

**I.      Claims of Error**

Gillson contends the ALJ erred in assessing her functional limitations because he improperly discredited her subjective statements and the medical source statements of Stephanie Schmidt, F.N.P., and Salvador Ortega, M.D.  She argues the ALJ's RFC assessment is flawed because it does not accurately reflect all of her functional limitations.

**II.     Credibility Determination**

In her initial contact with the agency, Gillson alleged disability due to back problems, arthritis, osteoporosis, high blood pressure, and right leg pain.  Gillson said she could not sit or stand for long periods, bend, or lift more than 20 pounds.  Admin. R. 135.  In her application documents, Gillson said she could lift no more than 15 pounds, walk less than a block before needing to rest for five minutes, and walk for a total of two blocks.  *Id.* at 147.  In her appeal of the initial denial of her claim in November 2007, Gillson alleged new impairments including memory problems, irritable bowel syndrome, chest pain, poor vision, tinnitus, sleep problems, anxiety, and headaches.  *Id.* at 193-94.

At the administrative hearing in December 2009, Gillson testified that she could lift ten pounds comfortably, but not frequently.  *Id.* at 37, 44.  She could stand for 15 to 30 minutes after which she would develop pain in the lower back and right hip, and her right leg would become numb.  *Id*. at 37.  If she could alternate sitting and standing as much as needed, she would be able

3 - FINDINGS AND RECOMMENDATION

to stand for a total of about two hours in an 8-hour workday. *Id.* at 38. She could walk for one-half block and could sit comfortably for a total of about two hours in an 8-hour workday. *Id.* at 38-39. Gillson testified that her hands sometimes swell and cramp. *Id.* at 42. She said she was forgetful and became confused easily and had difficulty hearing on the telephone. *Id.* at 44.

The ALJ accepted Gillson's allegations that she has degenerative joint disease, osteoporosis, rheumatoid arthritis, hypertension, hearing loss in the left ear, and depression, which combine to cause significant functional limitations reflected in the RFC assessment. However, the ALJ did not believe Gillson's claim that her symptoms are so intense, persistent, and limiting that she cannot perform work within the restrictions of the RFC assessment. *Id.* at 16. Effectively, the ALJ discounted Gillson's claims that she cannot lift 20 pounds occasionally and 10 pounds frequently, alternate sitting and standing to complete an 8-hour workday, and overcome her other combined symptoms to sustain a full-time work schedule.

If a claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged and no affirmative evidence of malingering exists, the ALJ must assess the credibility of the claimant regarding the severity of symptoms. *Smolen v. Chater*, 80 F3d 1273, 1281-82 (9th Cir 1996); *Cotton v. Bowen*, 799 F2d 1403, 1407-08 (9th Cir 1986); Social Security Ruling ("SSR") 96-7p, 1996 WL 374186 (July 2, 1996). Here, the ALJ found Gillson's medically determinable impairments could reasonably be expected to produce the symptoms she alleged. Thus, the ALJ was required to assess Gillson's credibility regarding the severity and limiting effects of her symptoms. *Smolen*, 80 F3d at 1281-82.

///

4 - FINDINGS AND RECOMMENDATION

An ALJ may discredit the claimant's testimony regarding the severity of symptoms by providing specific reasons for the credibility finding, supported by evidence in the case record. SSR 96-7p, 1996 WL 374186, at *4. The ALJ must make findings that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Tommasetti v. Astrue*, 533 F3d 1035, 1039 (9th Cir 2008), quoting *Thomas v. Barnhart*, 278 F3d 947, 958 (9th Cir 2002). An ALJ's adverse credibility finding must be explained with clear and convincing reasons. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F3d 1155, 1160 (9th Cir 2008); *Lingenfelter v. Astrue,* 504 F3d 1028, 1036 (9th Cir 2007).

In assessing credibility, an ALJ must consider all the evidence in the case record, including the objective medical evidence, the claimant's treatment history, medical opinions, daily activities, work history, the observations of third parties with knowledge of the claimant's functional limitations, and any other evidence that bears on the consistency and veracity of the claimant's statements. 20 CFR §§ 404.1529(c), 416.929(c); *Tommasetti*, 533 F3d at 1039; *Smolen*, 80 F3d at 1284; SSR 96-7p, 1996 WL 374186, at *5.

The ALJ's decision demonstrates that he considered all the evidence relating to the proper factors for evaluating credibility. He discussed the medical evidence at length, noting multiple instances in which the medical findings did not support Gillson's subjective complaints. For example, Gillson claimed chronic debilitating right hip pain, but diagnostic imaging was negative for any abnormality. Admin. R. 16, 329. She complained of swelling all over her body, but physical examination revealed no swelling. *Id.* at 17, 293, 295. During a psychodiagnostic evaluation in May 2007, Gillson complained of poor concentration and forgetfulness, but testing placed her in the average range for concentration and memory. *Id.* at 17, 231, 233. In

5 - FINDINGS AND RECOMMENDATION

November 2008, Bobby Han, M.D., performed a rheumatology evaluation for complaints of pain in the hands, feet, knees, and hips, but obtained unremarkable findings. *Id.* at 18, 365. The absence of medical findings that would be expected in a patient with Gillson's complaints undermines the credibility of those subjective complaints. *Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F3d 595, 600 (9th Cir 1999). The ALJ was entitled to consider this absence of clinical evidence of functional limitations in assessing Gillson's credibility.

The ALJ considered Gillson's treatment history. Gillson did not require treatment between August 2006 and March 2007, when she received routine follow up care for monitoring her hypertension. *Id.* at 17, 292, 289-90. Notably, Gillson's alleged onset of disability was October 31, 2006, midway through this gap in treatment. When a claimant does not seek treatment for months after the onset of an allegedly disabling condition, it supports an adverse inference as to the credibility of the allegation of disability. *Bruton v. Massanari,* 268 F3d 824, 828 (9th Cir 2001). There were a number of other gaps in treatment which Gillson attributed to her financial circumstances. This does not fully explain why she was able to obtain routine care but did not seek treatment when her alleged impairments became disabling.

The ALJ considered Gillson's work history. The ALJ observed that Gillson's last full-time employment ended on October 31, 2006, because her temporary position ended on that date due to budget cuts. Admin. R. 17, 229-30. This coincided with the alleged onset date of her disability. *Id.* at 11. When a claimant stops working for reasons other than disability, it supports an adverse inference as to the credibility of her claim that she could not continue working due to disability. *Bruton,* 268 F3d at 828. Gillson reported that, although she suffered from back pain and needed some help with lifting, she was able to perform the required activities of that job and

6 - FINDINGS AND RECOMMENDATION

was "highly commended" for her job performance. Admin. R. 17, 230. There is no indication in her work history that she ever stopped working at any of her past employment because she was medically unable to perform the required activities. Beginning in February 2007 and continuing through the date of the hearing, Gillson worked part-time as a greeter at an Elks Club, in shifts of up to six hours, and reported no problems performing that job. *Id.* at 17, 32, 229. This contradicts her testimony that she is unable to sit or stand more than two hours each in a day, and reasonably supports an adverse inference as to her credibility.

The ALJ also considered Gillson's reported daily activities. In addition to her part-time work, Gillson reportedly engages in a full range of activities of daily living, including light household chores, cooking, driving, using the computer, and looking for work. *Id.* at 14, 16, 18-19, 142, 144-46. These activities are not equivalent to full-time employment, but do suggest that Gillson is more capable than she alleges. For example, Gillson suggested she could not use her hands for manipulative activity such as typing on a prolonged basis due to cramping and swelling. As the ALJ noted, this is not fully consistent with her reported activities, including inputting data into a computer at her last full-time job and her current activities of using the internet and playing computer games. *Id.* at 19.

The ALJ considered the medical opinions of Maribeth Kallemeyn, Ph.D., Peter LeBray, Ph.D., and Martin Kehrli, M.D. *Id.* at 17-18. Dr. Kallemeyn performed a psychodiagnostic evaluation in May 2007. Gillson reported symptoms of memory loss and poor concentration, but admitted she could maintain concentration if she were interested in the activity. *Id.* at 231. She reported mild auditory, visual, and olfactory hallucinations. *Id.* Dr. Kallemeyn obtained unremarkable findings on her mental status examination. Notably, Gillson did not demonstrate

any pain behavior. *Id*. She reported a wide range of activities. *Id*. at 232. She said she quit playing pool, not because of her medical condition, but because she had moved away from her pool-playing friends. *Id.* at 232. On a memory screening test, Gillson scored in the normal range and on concentration and attention measures, she was in the average range. *Id.* at 233. Dr. Kallemeyn diagnosed an episode of major depression. *Id*. In June 2007, Dr. LeBray reviewed the entire record, including Dr. Kallemeyn's report, and found it supported a mild reactive depression with mild restrictions in activities of daily living, mild difficulties maintaining social functioning, and mild difficulties maintaining concentration, persistence, or pace. *Id.* at 244, 246. Also in June 2007, Dr. Kehrli reviewed the entire record, including the findings and reports of Gillson's treating providers and concluded Gillson could perform work activities limited to light exertion with postural restrictions consistent with the ALJ's RFC assessment. *Id.* at 249-50, 255. These medical opinions support the ALJ's RFC assessment and are inconsistent with Gillson's allegations of additional limitations.

Inconsistencies in Gillson's statements also support the ALJ's credibility finding. Gillson claimed attention and concentration difficulty, but admitted she could attend to tasks that interested her. *Id.* at 231. She told Dr. Kallemeyn she had applied for social security disability insurance benefits because she was depressed over losing her job and was having a hard time finding a new job, contrary to her allegations of physical impairments in the back, hip, knees, and legs. *Id.* In May 2007, Gillson reported she was actively seeking full-time work and had attended 40 job interviews in the preceding several months. *Id.* at 17, 229. This reasonably supports an inference that Gillson believed she was capable of full-time work, contrary to her allegations and testimony claiming disability.

8 - FINDINGS AND RECOMMENDATION

The ALJ's credibility determination is supported by inferences reasonably drawn from the record. His decision provides an adequate basis for the court to conclude that he did not discredit Gillson's subjective statements arbitrarily. His explanation is clear and convincing and the credibility determination should be upheld. *Tommasetti*, 533 F.3d at 1039; *Batson*, 359 F3d at 1193; *Thomas*, 278 F3d at 958.

### III.    Medical Source Statements

Gillson contends the ALJ failed to properly evaluate the medical source statement of Stephanie Schmidt, F.N.P., who provided her primary care. On October 22, 2008, Schmidt completed a questionnaire regarding Gillson's functional limitations. Admin. R. 274-77. Schmidt indicated Gillson could lift or carry 10 pounds occasionally and less than 10 pounds frequently. *Id*. at 274. She estimated Gillson could stand or walk for a total of two hours in an 8-hour workday and needed to alternate sitting and standing every 15 minutes or so to relieve discomfort in the back. *Id*. at 275. Schmidt indicated Gillson could never engage in any postural activity such as climbing, crouching, crawling, and stooping, and was limited to occasional manipulative activities, such as handling, reaching, and fingering. *Id*. at 276  Schmidt endorsed hearing loss in high pitches that would interfere with communication if the work environment were noisy and additional environmental limitations precluding work involving cold, vibration, humidity, dust, or hazards. *Id*. at 277.

An ALJ is required to consider and give due weight to all relevant evidence in the case record, including opinion evidence from medical sources such as nurse practitioners who have seen the claimant in their professional capacity. 20 CFR §§ 404.1527(b), 416.927(b); SSR 06-03p, 2006 WL 2329939, at *4 (Aug. 9, 2006). The regulations treat nurse practitioners as "other

sources." 20 CFR §§ 404.1513(a), (d), 416.913(a), (d).  The statements of "other sources" are evaluated as lay witness statements.  *Turner v. Comm'r of Soc. Sec.*, 613 F3d 1217, 1223-24 (9th Cir 2010).  Accordingly, to properly discount Schmidt's opinion, the ALJ was required to give reasons germane to the witness.  *Id.*; *Lewis v. Apfel,* 236 F3d 503, 511 (9th Cir 2001).

The ALJ considered Schmidt's assessment and all of her treatment records.  Admin. R. 16-18.  He gave the assessment "minimal weight" because it was not supported by objective findings or clinical observations from her treatment notes.  *Id.* at 20.  This finding is supported by Schmidt's treatment records.  In March 2007, in her first examination after the alleged onset of disability, Schmidt obtained normal findings on physical examination, except for elevated lipids, slightly elevated glucose, and elevated blood pressure, with reportedly normal blood pressure readings at home.  *Id.* at 289-90.  Schmidt next examined Gillson in September 2007 and again obtained generally benign findings in her physical examination.  *Id*. at 284.  A review of Gillson's records showed ideal hypertension readings over the preceding six months.  *Id.* at 284.  Schmidt saw Gillson in October 2007 for atypical chest pain.  Her examination was normal.  *Id.* at 282.  In February 2008, her physical examination findings were within normal limits, and Gillson's hypertension remained well controlled.  *Id.* at 280.  Schmidt saw Gillson in March 2008 for mild incontinence due to a cystocele and made no abnormal findings regarding Gillson's allegedly disabling conditions.  *Id.* at 279.  In October 2008, Schmidt saw Gillson for complaints of joint pain and stiffness.  *Id*. at 373-74.  Her findings were normal except that Gillson had a partially positive straight leg raise test on the right.  *Id*. at 373.  Schmidt ordered diagnostic imaging of the spine and referred Gillson to see Dr. Han for a rheumatology evaluation.  *Id.* at 374.  The imaging showed moderately advanced spondylosis, worst at L5-S1.

*Id*. at 366. Imaging of the hands was suspicious for synovitis associated with early inflammatory arthritis, but there were no erosive changes and only mild joint narrowing. *Id.*

These were Schmidt's objective findings and clinical observations when she completed her assessment questionnaire in October 2008. These findings provide no basis for the much more limited lifting limitation of 10 pounds, an inability to stand for two hours in a day, an inability to engage in any postural activities, limitations in manipulation, or environmental restrictions due to cold, vibration, and so forth. An ALJ can reject the opinion of a treating source that is conclusory and unsupported by clinical findings. *Meanel v. Apfel*, 172 F3d 1111, 1117 (9th Cir 1999).

The ALJ found that Schmidt relied heavily on Gillson's subjective reporting of the limiting effects of her symptoms in arriving at the functional limitations in her assessment. Admin. R. 20. This is a reasonable inference flowing logically from the absence of clinical findings to support Schmidt's conclusions. An ALJ is entitled to reject a the opinion of a treating source that is premised primarily on subjective complaints that the ALJ properly finds unreliable. *Tonapetyan v. Halter*, 242 F3d 1144, 1149 (9th Cir 2001).

The ALJ also found the functional limitations in Schmidt's assessment inconsistent with the activities Gillson reported. Admin. R. 20. For example, Gillson engaged in part-time work and a wide range of daily activities without reporting difficulties with postural activities such as stooping or crouching, yet Schmidt opined that she could not perform these activities at all. Similarly, Schmidt opined that Gillson could not hear well enough to communicate unless she were restricted to a quiet environment. The ALJ noted that problems with hearing had not

11 - FINDINGS AND RECOMMENDATION

prevented Gillson from working in the past; she did not complain of difficulty communicating in her past work or her present part-time work. *Id.* at 14.

The ALJ's reasons for discounting Schmidt's assessment are germane and supported by the record as a whole. Accordingly, the ALJ's evaluation of the assessment should be affirmed. *Turner*, 613 F3d at 1223-24; *Lewis,* 236 F3d at 511.

Schmidt's assessment was co-signed by Salvador Ortega, MD. Admin. R. 277. Gillson argues that the ALJ erred by failing to explain separately why he gave minimal weight to the assessment of Dr. Ortega. The record reflects that Dr. Ortega treated Gillson once in January 2005 for sinus pain and fevers. *Id*. at 305. This predated the alleged onset of disability by nearly two years. There is no evidence in the record that Dr. Ortega participated in Gillson's treatment during the relevant time period or evaluated any of the medical conditions that gave rise to the functional limitations in the assessment he co-signed with Schmidt. Under these circumstances, it was reasonable for the ALJ to evaluate the assessment as Schmidt's instead of Dr. Ortega's.

To the extent the ALJ erred by doing so, the error was harmless. An error is immaterial and harmless if the ALJ's underlying determination remains supported in spite of the error. *Carmickle*, 533 F3d at 1162-63 and n. 4. Dr. Ortega's assessment was the same as Schmidt's and the ALJ's reasons for discounting it applied equally regardless of which co-signer was responsible. Even if the standard for evaluating the opinion of an examining physician applied, which is doubtful due to the lack of evidence that Dr. Ortega examined Gillson in preparation for the assessment, the ALJ's determination would remain supported. An ALJ may discount the opinion of an examining physician for specific and legitimate reasons or, if the opinion is uncontradicted, for a clear and convincing explanation. *Thomas*, 278 F3d at 956-57. The ALJ's

12 - FINDINGS AND RECOMMENDATION

reasons for discounting the assessment are specific and legitimate and provide a clear and convincing explanation for giving the assessment minimal weight. Accordingly, the ALJ's underlying determination remains supported regardless of whether the assessment is evaluated as the opinion of an "other source" or the opinion of an examining physician. Thus, any error in attributing the assessment to Schmidt is immaterial and harmless.

Gillson also challenges the ALJ's evaluation of the Physical Residual Functional Capacity Assessment of Martin Kehrli, MD. The ALJ gave Dr. Kehrli's assessment significant weight because it was consistent with the record as a whole. Admin. R. 20. Dr. Kehrli reviewed the entire record and assessed Gillson with the capacity to perform the exertional requirements of light work, excluding work requiring her to climb ladders, ropes, or scaffolds. She could balance frequently and perform other postural activities, such as stooping, crouching, and crawling, no more than occasionally. *Id.* at 18, 249-50. State agency medical consultants, such as Dr. Kehrli, are highly qualified physicians who are experts in the evaluation of the medical issues in social security disability claims. SSR 96-6p, 1996 WL 374180 *2 (July 2, 1996). The Commissioner relies on their expert opinions to make findings of fact about the nature of a claimant's impairments and the severity of the functional limitations they impose. *Id.*; 20 CFR §§ 404.1527(f), 416.927(f). These expert opinions can be given weight to the extent they are supported by evidence in the case record. SSR 96-6p, 1996 WL 374180 at *2.

Gillson has offered no persuasive challenge the ALJ's finding that Dr. Kehrli's assessment was consistent with the record as a whole. The only inconsistent evidence, namely Gillson's subjective allegations and Schmidt's assessment from October 2008, was properly

13 - FINDINGS AND RECOMMENDATION

discounted by the ALJ for legally sufficient reasons already discussed. Accordingly, there is no error in the ALJ's evaluation of Dr. Kehrli's assessment.

## IV.     RFC Assessment

Gillson contends the ALJ erred because the RFC does not include a limitation reflecting Schmidt's assessment that she has hearing loss that might interfere with communication in a noisy work environment. The ALJ properly evaluated Schmidt's assessment and determined that Gillson's past and present work without communication difficulties demonstrated that her hearing loss was not of a severity that required accommodation in the RFC assessment. Admin. R. 14. This conclusion is a rational interpretation of the evidence and should not be disturbed.

Gillson also claims the ALJ failed to include functional limitations based on her pain. This argument fails because the ALJ considered all the evidence of functional limitations and reached an RFC assessment based on the limitations supported by the record as a whole. Indeed, all of the limitations in Gillson's RFC assessment appear to be based primarily on her allegations of pain. The ALJ was not required to incorporate additional limitations he found unsupported by the record. *Batson*, 359 F3d at 1197-98; *Osenbrock v. Apfel*, 240 F3d 1157, 1163-65 (9th Cir 2001); *Magallanes v. Bowen*, 881 F2d 747, 756-57 (9th Cir 1989).

///

///

///

///

///

///

## RECOMMENDATION

The ALJ's determination that Gillson failed to prove she was disabled within the meaning of the Social Security Act is based on proper legal standards and supported by substantial evidence in the record as a whole. Accordingly, the Commissioner's final decision that Gillson is not entitled to disability insurance benefits or supplemental security income under Titles II and XVI of the Social Security Act should be affirmed.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due September 15, 2011. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 29th day of August, 2011.

s/ Janice M. Stewart_____
Janice Stewart
United States Magistrate Judge